## Stoughton *against* Pasco and Pasco :

### IN ERROR.

To render a mortgage valid as against strangers, it must give reasonable notice of the incumbrance on the land mortgaged.

But to constitute such reasonable notice, it is not requisite, that the condition should be so completely certain as to preclude the necessity of extraneous enquiry; it being sufficient to state the subject matter of the mortgage, and that from which, by the exercise of common prudence and ordinary diligence, the extent of the incumbrance may be ascertained.

Therefore, where *A* and *B*. were joint trustees of the effects of *C*., a deceased person, for the benefit of certain legatees ; and *A*., to secure *B*., for the amount due, which was then unascertained, executed to *B*. a mortgage, the condition of which required, that *A*. should pay to *B*. all monies in his hands belonging to the estate of *C*., deliver to him the notes and other securities for money belonging to said estate, and in all respects render him a true account thereof ; it was held, that such mortgage was a valid incumbrance for the amount due, which was found to be 3,137 dollars, as against *D*., who, with actual notice from *A*., of an adjustment between him and *B*., and that more than 2,800 dollars was due from *A*. to *B*., had afterwards taken a mortgage of the same land.

This was a bill in chancery, brought by *Stoughton*, to redeem mortgaged premises.

The plaintiff and *Jonathan Pasco* were trustees of the goods and effects of one *Stephen Heath*, deceased, for the benefit of certain legatees, according to his last will and testament. The amount of the property in the hands of the trustees, in *February*, 1812, which had been inventoried, was, at the inventory price, 6,501 dollars, 28 cents, and of property not inventoried, 302 dollars, 50 cents. On the 8th of *February*, 1823, *Jonathan Pasco*, as trustee as aforesaid, was justly indebted to the plaintiff in a large sum, the amount of which was, at that time, unascertained. To secure such sum, on the day last-mentioned, he executed a mortgage deed of the premises to the plaintiff, which was duly recorded, with a condition subjoined in these words : " If said *Pasco* shall pay to said *Stoughton* all monies in his hands belonging to the estate of *Stephen Heath*, deceased ;

Hartford,
June,
1825.

Stoughton
v.
Pasco.

and also deliver to said *Stoughton* all notes and other securities for money belonging to said estate in his hands ; and shall, in all respects, render to said *Stoughton* a true account of all monies and securities for the payment of money belonging to said estate, within twenty days from this date ; and shall pay to said *Stoughton* his the said *Pasco's* note of hand, payable to said *Stoughton*, for the sum of 210 dollars, on demand, with interest, dated *March* 5th 1814 ; then this deed to be void," &c. The court found, that there was due to the plaintiff from said *Pasco* for monies and effects in his hands of the estate of *Stephen Heath*, deceased, intended to have been secured by said mortgage deed, the sum of 3,137 dollars, 85 cents ; besides the amount of the note mentioned in the mortgage. By subsequent deeds, dated the 8th and 22nd of *February*, 1823, and duly recorded, *Jonathan Pasco* mortgaged the premises to *Ashna Pasco*, after a computation between the said *Jonathan* and the plaintiff, ascertaining the debt due to the latter. Before the execution of these mortgages, and before the debts secured by them had accrued, *Ashna Pasco* had notice, by information from *Jonathan*, of such computation and settlement, and that the sum due to the plaintiff was more than 2800 dollars.

*Jonathan* and *Ashna Pasco* were made parties defendants to the bill. As against *Jonathan* the court decreed a foreclosure, but denied the relief sought against *Ashna*, considering the mortgage in question to be void in relation to him. To review this determination, the plaintiff procured the record to be transmitted to this Court, pursuant to the statute.

*Daggett* and *T. S. Williams*, for the plaintiff, contended, 1. That the condition of the mortgage deed, executed by *Jonathan Pasco* to the plaintiff, was valid in itself. This deed had all the forms required by statute, and was executed without any fraudulent design. The *subject matter* of the mortgage, was specified. If there was any defect, it arose from the fact, that the precise amount of indebtedness was not ascertained and specified. Is this necessary ? No statute or decided case has required it. *Pettibone* v. *Griswold*, 4 *Conn. Rep.* 158. went further than any other case ; but the principle of the decision establishes the validity of this mortgage. In that case, the mortgage covered, not a subsisting though unascertained debt, but all future notes and receipts, without designating any ; and the court, in deciding such mortgage to be void as against the creditors of the mortgagor, distinctly admitted, that absolute cer-

Hartford,
June,
1825.

Stoughton
v.
Pasco.

tainty was not to be expected, and asserted that a mortgage given to indemnify the surety of a public officer or an administrator, would be good. The case before the court is exactly within the principle of the case put; the trust committed to the plaintiff and *Jonathan Pasco* being nothing but a continued administration. If *A.* having indorsed a note for *B.*, should take from *B.* a mortgage to indemnify him against such indorsement, the validity of the mortgage would hardly be questioned; and yet every objection that can be brought against this mortgage, would lie against that. Not only would the amount of the mortgagee's claim be unascertained, but it would be uncertain whether he would ever be damnified, and, of course, uncertain whether he would ever have any claim. It is sufficient that the mortgage in question had all the certainty, that the nature of the case admitted of. The exigencies of business and public convenience require the security, which a mortgage affords, in many cases where the exact amount of the incumbrance cannot appear upon the record.

2. That if the mortgage were void as against creditors generally, yet it was good as against *Ashna Pasco*, who had actual notice of the mortgage debt. The objection to the mortgage is founded solely on the idea that the record does not convey notice of the incumbrance. But if a subsequent incumbrancer in fact had such notice, before his debt accrued, surely he cannot make this objection in a court of chancery. If actual knowledge of the contents of a mortgage be brought home to a party, notice from the register is unnecessary. *Beekman* v. *Frost* & al. 18 *Johns. Rep.* 564. If a person has knowledge of a deed not recorded, it shall operate against him, in the same manner, and to the same extent, as though it were recorded.

*N. Smith* and *Scarborough*, for the defendants, insisted, 1. That the mortgage deed in question was void as against creditors, for uncertainty. It neither stated the amount of the mortgage deed; nor furnished any *data* from which the amount could be ascertained. If the mortgage was valid, it effectually locked up the premises from the creditors of the mortgagor; and as soon as it is generally understood, that such mortgages have the sanction of the law, they will be resorted to, by fraudulent debtors, for the purpose of concealing their property. The question here is, not whether a man may not secure himself by a mortgage, against *future liabilities*; but whether *subsisting debts*, which are the subject of a mortgage, must not be

*specified,* or *described.* The case is within the rule established by *Pettibone* v. *Griswold ;* and without the exceptions referred to, by the Chief Justice, in his opinion in that case.

2. That the mortgage could not be made good, by the notice proved on the trial. In the first place, a mortgage, which the law pronounces void, as opposed to the policy of the recording system, cannot be helped, by any parol proof of notice. If the creditor knows what the transaction is, he knows that the mortgage is void. Secondly, the notice proved in this case was insufficient; it being almost as vague and uncertain as the condition of the deed.

Hosmer, Ch. J. The general question in this case, is, whether the mortgage made by *Jonathan Pasco* to the plaintiff, is void in respect of *Ashna Pasco,* a subsequent mortgagee, except as regards a small debt by promissory note.

The objection made, on the defendant's part, to the granting of the prayer of the plaintiff's bill, is founded on the law requiring the recording of deeds. It is insisted, that the policy of the recording system, will be violated, by giving validity to a mortgage, containing, as the one in question is supposed to do, no reasonable certainty in the description of the debt intended to be secured. The determination of this Court, in *Pettibone* v. *Griswold,* 4 *Conn. Rep.* 158. is principally relied on; and is claimed to sustain the defendant's objection.

There are two questions embraced in the present case. The first is, whether the demand of *Stoughton* is of such a nature as to authorize the mortgage security; and the second is, whether it is described with such reasonable certainty, that in respect of it, a subsequent mortgagee is legally affected with notice.

1. In *Pettibone* v. *Griswold,* before cited, it was said, that a mortgage may be taken " for existing debts, existing liabilities, and perhaps for debts to be contracted in future." The court has found, that *Jonathan Pasco* was justly indebted to the plaintiff, as trustee on *Heath's* estate, in the sum of 3,137 dollars, 85 cents ; and that this sum was intended to be secured by the mortgage deed to *Stoughton.* The precise sum of money due to the plaintiff had not been ascertained, at the date of the mortgage ; and hence the phraseology of the condition, that if *Jonathan Pasco* should pay to *Stoughton* all the monies, and deliver to him all the securities for money, in his hands, belonging to *Heath's* estate, and render a true account, the deed should be void. That *Jonathan Pasco* was under a legal obli-

gation to do what he stipulated, and that, as to him, *Stoughton* had a just demand, to the extent of the stipulation, must be implied by every one who reads the above condition. It would not enter into the imagination of any one, that the mortgage was for a sum of money not due; and that, contrary to common sense and universal usage, *Pasco* had made a pledge of his estate to secure to the plaintiff a mere gratuity. But this point need be pursued no further, as the court, in the decree passed, considered the mortgage valid as between the parties.

2. The question remains whether the demand of the plaintiff is described in the mortgage, with such reasonable certainty, as from the record to affect a subsequent mortgage with notice.

Now, what would such person understand from reading the aforesaid condition? On the principle of constructive notice of the record, the subsequent mortgagee must be supposed to have read the deed with its condition; and hence the propriety of the proposed question. On such perusal, he must be presumed to know, that the mortgage was for a debt, in some manner resulting from the trust estate in the mortgagor's hands, due to the co-trustee, the plaintiff; that the precise amount, at the date of the mortgage, was not ascertained; that it embraced all the monies and securities of *Heath,* in the hands of *Pasco;* and that this person had bound himself to render a true account of his indebtedness. In addition to this, let it be remembered, that *Ashna Pasco,* previous to the delivery of either deed to him, had information from his mortgagor, that the account between *Jonathan Pasco* and *Stoughton* had been adjusted, and that the sum now claimed as a debt, was acknowledged to be due.

That the condition of a mortgage deed must give *reasonable notice* of the incumbrance on the land mortgaged, is an established principle. This is the undoubted criterion, by which, in respect of third persons, the validity of the mortgage is to be tested. What, then, is reasonable notice? Is it requisite that the condition should be so completely certain, in every particular, as to preclude the necessity of all extraneous enquiry? Certainly not. It was adjudged in *Pettibone* v. *Griswold* before cited, that a mortgage to indemnify a surety for the official good conduct of another, is valid universally; and yet the event on which an indebtedness may arise, as well as the amount, are utterly unforeseen and contingent. Without a specification of either of these facts, there exists that reasonable notice, which, in favour of those who are not parties to the mortgage,

the law demands.    The object of the recording law is to prevent fraud on purchasers and creditors ; and such facts must be reasonably notified as are sufficient for this purpose; but, as has been shewn, notice perfect and complete, without any enquiry dehors the record, is not required.

One head of presumptive notice is this : that the law imputes to the purchaser the knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprized him.    Hence, it has become a principle in a court of equity, that the notice, which presents a certain object, concerning which successful enquiries, without unreasonable inconvenience, may be made, is sufficient.    In *Peters* v. *Goodrich*, 3 *Conn. Rep.* 150. the above principle was recognized and applied.    *Curtis* executed a mortgage deed to *Goodrich*, which was duly recorded, with condition to indemnify him against a promissory note, of which the latter was an indorser.    To foreclose the equity of redemption, a bill was brought by *Goodrich*, from which it appeared, that the mortgage was variant from the note, both in respect of its date, and of the person to whom it was payable.    The defendant, who was a subsequent mortgagee, objected against the correction of these mistakes, upon the specific ground, that the description in the mortgage deed must be precisely adhered to, pursuant to the supposed policy of the recording system.    In the delivery of their opinion, the court observed, that "as between the parties, it is unquestionably clear, that the misconception of the date of the note, and of the promissee, admitted of correction, on the common principles applied in chancery in similar cases ; and the second mortgagee had such constructive notice of the fact from the recorded deed, as placed him in no better condition than the mortgagor    Whatever is sufficient to put a person on enquiry, is considered in equity to convey notice ; for the law imputes to a person the knowledge of a fact, of which the exercise of common prudence and ordinary diligence, must have apprized him.    Had the second mortgagee applied to *Goodrich* for information, as it was his intention to represent the facts correctly, relative to the mistakes, he would have had a communication of all the knowledge he now possesses."

The same principle was recognized by the court, in *Pettibone* v. *Griswold*, before cited.    After having declared it to be the policy of our law, that the title to real estate should be registered for the benefit of creditors and all others interested, it

*Hartford,*
June,
1825.

*Stoughton*
*v.*
Pasco.

was observed by the court : " That it is the object of this law" (the act requiring deeds to be recorded) " to prevent fraud, and give security and stability to title.   It results, unquestionably, that the condition of a mortgage deed must give reasonable notice of the incumbrances on the land mortgaged   A creditor is not obliged by law to make enquiry *in pais* concerning the *liens* on the property of his debtor; but on application to the record, he may acquire all the information, which his interest demands : at least, he must have the power of knowing from this source, the subject matter of the mortgage, that his investigation may be guided by something, which will terminate in a certain result.   And what is not of less importance, the incumbrance on the property must be so defined as to prevent the substitution of every thing, which a fraudulent grantor may devise, to shield himself from the demands of his creditors."   In the argument of this case, it has been supposed, that the court, iu *Pettibone* v. *Griswold*, had required perfect and complete certainty in the condition of a mortgage, so far as relates to strangers to the transaction ; and to such a degree as to preclude the necessity of any further enquiry.   But the error is most obvious, and resulted entirely from the construction of a single sentence in the opinion expressed, disjoined from all other parts of it ; as if it had been declared in the form of an axiom, and were insulated and alone.   I readily admit, that the paragraph immediately succeeding the rule relative to notice, was not expressed with a precision that defies all criticism.   Instead of the expression " concerning the liens," more correctly it should have been " concerning the *existence* of the liens."   It was expected, however, to receive its construction as being the part of an entire subject, each sentence contributing something to the precise developement of the court's opinion ; in pursuance of the maxim, *Ex antecedentibus et consequentibus fit optima interpretatio.*   More especially may it be demanded, that it be read with this qualification : " at least, he must have the power of knowing from this source," *i. e.* from the condition of the deed, " the subject matter of the mortgage, that his *investigation* may be guided by something, which will terminate in a certain result."   It is extremely obvious, that the case of *Pettibone* v *Griswold* was not affected by the preceding principles ; and this may account for their being perhaps more loosely expressed than they would have been, had a close application of them been required.   The mortgage in that case embraced *all future notes and receipts,* without the designation of any, and

supplied *neither information, nor the probable means of successful enquiry ;* and, as there was no imaginable check on the substitution of notes and receipts at pleasure, and without limitation of time, the policy of the recording system, if such mortgage were valid, would effectually be defeated. A condition to a deed made to secure all future supplies, debts and liabilities, would not be more dangerously lax and indefinite.

The principle contended for by the defendants, is refuted by the case of *Peters* v. *Goodrich ;* by the expressions already recited from *Pettibone* v. *Griswold* ; and by other parts of the same case. The latter case requires, that the record should contain sufficient information relative to the subject matter of a mortgage, to direct the enquirer to the necessary intelligence, and to prevent a debtor, by extreme indefiniteness and generality, from the substitution of every possible demand at his pleasure. " I am well aware," (said the Judge, when delivering the opinion of the court) " that absolute certainty is not to be expected from an examination of the records of land titles ; but there always may and ought to be a *certain object,* after which suitable enquiries may be made. A mortgage may be given to indemnify a person from damages arising, by reason of his having become the surety of another, in the office of sheriff or collector ; or as administrator on an estate. In all these cases, an enquiring creditor cannot know from the record the precise incumbrance ; but he has notice of certain definite facts, which *point to* and *guide him in,* the necessary investigation on the subject. Cases of this description must not be confounded with conditions to deeds, which neither communicate any certain information, nor *designate any track,* in pursuance of which information may be obtained."

In the transaction of business, the exigencies of it not unfrequently require, that the conditions of mortgage deeds should be as uncertain as the one under discussion ; and such mortgages are unquestionably legal. Both private justice and the convenience of the public demand, that they should be considered valid. The case of mortgages for the indemnity of sureties, has already been mentioned. A mortgage to secure an unliquidated book debt, or the fidelity of a factor or bailiff, whose business it is to receive money and pay it over, undoubtedly would be good ; and yet there is nothing certain here but the subject matter of the stipulation.

What, then, is the fatal uncertainty existing in the description of the debt and obligation of *Jonathan Pasco ?* The sum

of the indebtedness was not, and could not be, specified ; nor was it necessary that it should be ; but the subject matter of the mortgage was explicitly stated. The subsequent mortgagee had notice from the record, that *Jonathan Pasco* was indebted ; and that he was accountable to the plaintiff for all the monies, and securities for money, of *Heath.* What the original amount was, the inventory of *Heath's* estate would inform him ; and he would have experienced no difficulty in ascertaining the precise sum and manner of *Jonathan Pasco's* indebtedness. He was informed, by the mouth of his mortgagor, that a settlement had been made between him and the plaintiff ; and that the balance due surmounted twenty-eight hundred dollars. Instead of effectuating the policy of the recording system, by an invalidation of the plaintiff's mortgage, the court would, in that event, be instrumental in the perpetration of a hardship most inequitable. The free use and disposal of a person's property, where neither law nor policy forbids, would be inhibited ; the exigencies of business, in promotion of the general convenience, disregarded ; and the impracticable principle, in all cases, that mortgage conditions must contain within themselves, not reasonable certainty only, but certainty to a certain intent in every particular, adopted. This would be conformable neither to correct principles, nor to our own adjudications.

PETERS, J. was of opinion that this case was not distinguishable in principle from *Pettibone* v. *Griswold ;* and would, therefore, affirm the decree of the superior court.

BRAINARD, J. concurred with the Chief Justice.

BRISTOL, J. said, that aside from the case of *Pettibone* v. *Griswold*, he should have no doubt that the mortgage in question was good ; but that case had produced some hesitation in his mind ; and he was inclined to think, that the present case must be governed by it.

Decree reversed.