## PAGE *against* GREEN and others.

Where the holder of a note payable to another person, and secured to him by mortgage, put it into the hands of an attorney for collection, to whom the

promisee paid the money due on it ; and the attorney thereupon delivered it to him, with the amount paid indorsed thereon, but without assigning it ; it was held, that the effect of this transaction was to restore to the promisee his title to the note, and the security was afterwards as valid as though the note had always remained unpaid in his possession.

On the 14th of *April,* 1812, *A.* being the owner in fee of a certain tract of land, in consideration of a bond executed by *B.*, conditioned that *B.*, aided by the avails of such land, should support *A.*, during life, conveyed the land to *B.*, and *B.*, on the same day, executed a deed thereof to *A.*, conditioned to be void on the performance of the condition of this bond. *B.* also executed a lease of the land to *A.* during her life. *B.* supported *A.*, according to the condition of the bond, until the 11th of *March,* 1822, when *B.* became insolvent, and unable to furnish any further support. *B.* then executed a quit-claim deed of the land to *A.*, and *A.* executed a similar deed thereof to *C.* ; to whom *A.* and *B.* had previously mortgaged the land, to secure a debt due from them to him. At the same time, *A.* gave up *B's.* bond to him, and *C.* executed his bond to *A.*, conditioned for the support of *A.* during the remainder of her life. This condition *C.* performed. After the incumbrances above-mentioned, *B.* mortgaged the land, so incumbered, to *D.*, to secure a just debt. On a bill brought by *D.*, against *B.* and *C.*, praying for a foreclosure, it was held, 1. that the deed from *B.* to *A.* was a mortgage, in contradistinction from an estate, which would become absolute and irredeemable, by non-performance of the condition ; 2, that *C.* was tenant in fee of the land, with an equitable lien upon it, to the amount of *A.* and *B's.* debt to him, and the support of *A.* after the insolvency of *B.* ; 3. that *D.*, being third mortgagee, was bound to extinguish these incumbrances, before he could render his pledge available to him ; and 4. that subject to this deduction, he was entitled to the relief sought.

This was a bill in chancery, tried at *Litchfield, August* term, 1826, before *Daggett,* J.

On the 14th of *April,* 1812, one *Luther Walker,* owned, in fee-simple, certain pieces of land, of the value of 700 dollars, a part of which were subject to a mortgage in favour of *Isaac Green,* to secure the payment of a note due to him from *Lucy Gridley* and *Walker,* for 52 dollars, 74 cents. This note was paid, by *Green,* to *Samuel Church,* Esq., who had received it for collection, of *Page,* the plaintiff. *Church* indorsed on the note the sum paid by *Green,* and then delivered it to him ; but it was never assigned to him. On the same 14th of *April, Walker* executed to *Lucy Gridley* his bond, of that date, in the penal sum of 800 dollars, the condition of which was as follows : " The condition of the above obligation is such, that whereas the said *Luther Walker* has, this day, in consideration of a deed of land given him, by the said *Gridley,* of even date with this instrument, contracted and agreed to maintain and support the said *Lucy Gridley,* in sickness and in health, with

all the necessaries and comforts of life, with clothing, diet and physic, during the natural life of the said *Lucy*, with the assistance of the avails of the place where the said *Lucy* now lives, and which the said *Walker* has, this day, given her a lease of, during her natural life : now, if the said *Walker* shall well and truly maintain and support the said *Lucy*, in sickness and in health, with the avails of the place aforesaid, in all the necessaries and comforts of life, during the natural life of the said *Lucy*, then the aforesaid bond is to be void, &c. The meaning of this condition is, that the said *Walker* is to have the avails of the use of said place, to be applied towards the support of the said *Lucy ;* and she is not to apply them to any other object." *Walker* also conveyed the land in question, to *Lucy Gridley*, by a deed conditioned to be void on the performance of the condition of his bond ; and, at the same time, executed a lease of it to her, during her life. The title of *Walker* to the land, was acquired, by a deed from the same *Lucy Gridley* to him, on the said 14th of *April*, 1812 : the only consideration of which was the above-mentioned bond. Under this deed he possessed and occupied the land, receiving all the rents and profits, and supported *Lucy Gridley*, according to the condition of his bond, until the 11th of *March*, 1822, when he became insolvent and unable to furnish her any further support, or to respond in damages for his failure. He then executed a quit-claim deed of the premises to her, and she executed a similar deed thereof to *Green*. At the same time, she gave up to *Walker* her bond against him ; and *Green*, in consideration of her deed to him, executed his bond to her, conditioned for her support during life ; and from that time until her death, which was in *September*, 1824, she was supported by him

*Walker*, having given his promissory note to *Holley & Coffing* for 740 dollars, 22 cents, which he justly owed them, to secure the payment thereof, had previously mortgaged to them the land in question, already incumbered with the mortgage to *Green*, and the mortgage and life-lease to *Lucy Gridley ;* and *Holley & Coffing* afterwards, for value received, assigned such note and mortgage to the plaintiff.

*Green* died in *December*, 1824 ; and the defendants are his administrator, widow and heirs, together with *Walker*.

The bill prayed for a foreclosure against *Walker*, and for a

conveyance, by the other defendants, of the right and title of *Green*. There was also a prayer for general relief.

*Walker* was defaulted. The other defendants appeared and filed their answer. After a hearing on the bill and the answer, the judge found the facts before stated, and reserved the case for the advice of this Court as to what decree ought to be passed thereon.

Litchfield,
June
1827.

Page
v.
Green.

*S. Church* and *J. W. Huntington*, for the plaintiff, contended,

1. That the plaintiff was entitled to relief against the forfeiture of the estate at law, on the following grounds.

First, the deed of *Walker* is, both in form and substance, a *mortgage*, and consequently, the estate is redeemable. It was made by him to secure the performance of a certain duty, which he had stipulated to perform ; and the grantee has all the remedies, which a mortgagee is entitled to. 2 *Swift's Dig.* 163, 4. *Goodman* v. *Grierson,* 3 *Ball & Beatty* 279. To constitute a mortgage, it is not necessary that the condition should be *to pay money.* It may be *that ;* or to furnish an indemnity ; or to secure the performance of a particular act.

Secondly, this conveyance may be considered as equivalent to a mere *security for money.* First, because it is optional with the obligor to pay the money, or do the collateral act. Secondly, because the act to be done, is, in effect, to pay money, *i. e.* to pay so much money as is necessary for the stipulated support.

Thirdly, this court can grant relief on the great and well established principle, that in all cases of contracts, where a full compensation can be made, so as to render the party perfectly secure and indemnified, chancery will relieve. 1 *Madd. Chan.* 35, 6, 7. 28, 9. 26, 7. 2 *Swift's Dig.* 83, 4. 86. *Barnardiston* v. *Fane* & al. 2 *Vern.* 366. *Walker* & al. v. *Wheeler* & al. 2 *Conn. Rep.* 299. *Skinner* v. *White,* 17 *Johns. Rep.* 369. *Eaton* v. *Lyon,* 3 *Ves.* jun. 690, 693. *Sloman* v. *Walter,* 1 *Bro. Ch. Rep.* 418. *Drewe* v. *Corp,* 9 *Ves.* jun. 368. *Drewe* v. *Hanson,* 6 *Ves.* jun. 675. *Halsey* v. *Grant,* 13 *Ves.* jun. 78. In the present case, the nature of the contract is such, that *Lucy Gridley* could receive the fullest and most adequate compensation and indemnity, by allowing the estate to be redeemed, and thus relieving against this forfeiture. If she had sued on the bond, could it not have been *chancered?* Would there have

*Litchfield,*
June,
1827.

Page
*v.*
Green.

been any difficulty in ascertaining the damage actually sustained ?

2. That the proper kind of relief, as against these defendants, is a *foreclosure*, unless the plaintiff's debt be paid ; for as to them the case is the same as though *Walker* had performed the condition of his bond.

3. That if the specific relief prayed for be not proper, the court can give such other relief as is consistent with the general nature of the bill. *Starr* v. *Ellis,* 6 *Johns. Chan. Rep.* 395.

*Bacon,* for the defendants, contended 1. That the plaintiff had no title in law or equity. The condition of *Walker's* deed, is, to perform the condition of the bond, not to pay the penalty, or any other sum of money. First, this deed is the same as if the condition of the bond had been recited in the deed, without mentioning the bond. It is therefore strictly a conditional deed. *Shep. Touch.* 117, 118, 120, 121. *Co. Litt.* 201. 1 *Mad. Chan.* 38. *Chilliner* v. *Chilliner,* 2 *Ves.* 528. *Bertie* & ux. v. Lord *Falkland,* 2 *Freem.* 220, 1. Secondly, this condition has not been performed : *Walker* did not support *Lucy Gridley* during her natural life. The duty was a *personal* one, which admitted of no substitute. She reposed a *confidence* in him. If he did not perform, no one else could. Suppose the condition had been, that *Walker* should marry *Lucy Gridley ;* would this duty be transferable ? The estate, then, was determined by *Walker's* failure of performance ; and a forfeiture, which determines the estate, when it happens, cannot be relieved against. 1 *Madd. Chan.* 37.

2. That the plaintiff was not entitled to a decree of foreclosure. First, this is not a *mortgage.* It wants the inseparable incidents of such an estate. There was no *debt,* which the mortgagee could compel the payment of, or which she could assign. 2 *Bla. Comm.* 157, 8. 2 *Swift's Dig.* 163. Secondly, no one can sustain a bill of foreclosure, but he who has the *legal* estate ; the object of such bill being simply to cut off the equitable estate of the defendant from the legal estate of the plaintiff. But in this case, the *defendants* have the legal estate.

3. That if the plaintiff was entitled to a decree against the defendants, it must be on the condition of his paying to them the amount of the note secured by the first mortgage, and the

expence of *Lucy Gridley's* support from the time of *Walker's* failure until her death.

Litchfield,
June,
1827.

Page
*v.*
Green.

The counsel for the plaintiff, in reply, insisted, 1, That the contract for the support of *Lucy Gridley*, was in no sense *fiduciary*. The fulfilment of it required only, that the *means of support* should be furnished. No *personal* services or attentions on the part of *Walker*, were required. He was bound to see, that she had the necessaries and comforts of life ; and this was all. Not only the object, but the *form* of the contract, shews, that a payment of money would discharge the obligation. It is a *bond in a penalty*. Both parties seem to have anticipated, that there might be a failure ; and they have stipulated for the payment of money, in that event. Her remedy was on this bond. If she had sued and recovered, her damage must have been assessed in money.

2. That if *Walker* alone could furnish the support, it is not a legitimate consequence, that his failure to do it operated to make the estate irredeemable.

3. That adequate compensation could be made for the non-performance of the condition of the bond. To what does such non-performance entitle the obligee ? To an indemnity for the loss she has sustained, by *Walker's* failure to support. Cannot that be ascertained ?

4. That the plaintiff is entitled to the relief sought, without paying to the defendants the amount of the note secured by the first mortgage. First, this note has been *paid*. It was put into the hands of an attorney *for collection ;* and he collected the money due on it. That mortgage, therefore, is no longer an existing incumbrance. Secondly, this note was never reassigned to *Green*. Indeed, the attorney had no authority to reassign it ; the collection of the money due on it being all that he was authorized to do. Thirdly, the payment of this note, by *Green*, was not, of itself, a reassignment in equity, so as to give him a priority over the plaintiff ; because *Green* could not have redeemed the first mortgage without redeeming the second. *Phelps* v. *Ellsworth,* 3 *Day* 397. Besides, such a consequence would be highly *inequitable ;* as the plaintiff, in his purchase of *Holley & Coffing*, included and paid for this note. Fourthly, *Green*, by his deed from *Lucy Gridley*, became vested with the equity of redemption only ; for she and *Walker* had nothing more. The plaintiff had the legal estate, by vir-

*Litchfield,*
*June,*
*1827.*

Page
*v.*
Green.

tue of the assignment of the first mortgage. Now, if the first mortgage had been bought in, by *Green,* as he claims, equity will not consider an incumbrance as subsisting, if it injure a subsequent *bona fide* purchaser, under the very party who has purchased it in, nor unless he declare his intention at the time. *Starr* v. *Ellis,* 6 *Johns. Chan. Rep.* 393, 395. *Gardner,* admr. v. *Astor,* 3 *Johns. Chan. Rep.* 53.

HOSMER, Ch. J. The only difficulty in this case, arises from the complexity of the facts, and the peculiarity attending the title of the defendants. They are both tenants in fee simple and mortgagees; and the plaintiff likewise is in the condition of a mortgagee, by virtue of the assignment to him of the mortgage given by *Luther Walker* to *Holley* & *Coffing.* For the purpose of perspicuity, I will first attend to the title of the defendants, and then to the title of the plaintiff.

The defendants are the widow, the administrator and the heirs of *Isaac Green,* and invested with all the rights appertaining to him, at his decease.

The freehold title to the premises was originally in *Lucy Gridley.* In *April,* 1812, she conveyed the land in question to *Luther Walker,* in fee simple; and on the 11th of *March,* 1822, he released the premises to *Lucy Gridley;* and she released them to *Isaac Green. Green* then became tenant in fee simple of the premises, and so continued until his death.

In the mean time, the land had been subjected to certain incumbrances, to which I shall next attend.

The first of them was a mortgage to *Isaac Green,* in security of a note for 52 dollars, 74 cents, executed to him, by *Luther Walker* and *Lucy Gridley.* It has been said, that this note was paid; but the facts on which this supposition was founded, decisively show, that it is still due. The note was formerly in the plaintiff's possession, it is presumed, by assignment; and by him was delivered to an attorney for collection. Instead, however, of its having been collected, *Green,* the promisee, paid the amount of it to the plaintiff's attorney, and resumed it into his own possession. It was the legal effect of this transaction, to annul the title of the plaintiff to the note, and to place the parties in *statu quo;* so that the validity of the security is the same, as if it had never been assigned, but had ever remained, unpaid as it was, in the possession of *Green.* The point has of-

ten been decided, and by this Court was settled in *Camp* v. *Smith*, 5 *Conn. Rep*. 80.

The next incumbrance originated in a transaction between *Luther Walker* and *Lucy Gridley*. In consideration of a bond executed by *Walker*, with condition, out of the avails of the aforesaid property and from his own resources, to support her, during her natural life, she conveyed the premises to him ; and, at the same time, he executed a deed of them to her in fee simple, to be void on the performance of his engagement. Pursuant to agreement, he supported her until the 11th *March*, 1822, when he became insolvent, and incapable of further performing his contract ; and *Green*, with the knowledge and co-operation of *Walker*, assumed the same engagement, and supported *Lucy Gridley* during the residue of her life. By virtue of this transaction, he essentially took the place of *Walker ;* discharged his duty ; and was invested with an equitable lien on the property mortgaged. This position, however, has been controverted, by the assertion, that the deed from *Walker* to *Lucy Gridley*, was not a mortgage, but that by the non-performance of the condition, the estate was vested in her, absolutely and indefeasibly. To sustain the proposition, many cases were cited, which, on a slight view of them, will be found to be inapplicable. Conditions may be infinitely various ; and hence it is necessary to examine them with precision, in order to ascertain their legal effect. The citations of the defendants' counsel, are all illustrated and exemplified, by the single case put in the 325th section of *Co. Litt.* 201. *a.* And see *Shep. Touch.* 117 to 120. Upon condition in a deed, says this author, if a man infeoff another, reserving a certain rent payable at a specified time, on condition that it shall be lawful, if the rent be behind, for the feoffor to enter ; if the rent be not paid, he may enter and oust the feoffee of his estate. (Vid. *Chalker* v. *Chalker*, 1 *Conn. Rep.* 79.) The reason of the rule is perfectly obvious. It is founded on the clear intention of the parties to the contract. The case before the Court, however, is widely different. *Walker* had obliged himself, by bond, to support *Lucy Gridley*, and in collateral security of this engagement, he executed to her a deed, defeasible on the performance of it. Conformably with the intention of the parties in this transaction, by familiar legal consequence, this was a mortgage. It was an incident to the principal contract by way of pledge, to render the performance of it secure. The case is the same

*Litchfield,*
June,
1827.

*Page*
*v.*
*Green.*

precisely, as if, instead of agreeing to support *Lucy Gridley* for life, *Walker* had engaged to pay her one hundred dollars annually, that she might maintain herself, and had executed a deed with condition to secure this engagement. No objection exists, as was contended in the argument of the case, to the want of certainty in the contract. *Id certum est, quod certnm reddi potest ;* and the duty assumed is precise and reducible to reasonable certainty. Besides, the observation has no place. The bond is a legal contract, and comprising an ascertainable sum in case of non-performance. And the collateral security to the bond is free from every exception. *Stoughton* v. *Pasco,* 5 *Conn. Rep.* 442.

It appears from the preceding description, that the heirs of *Green,* are tenants in fee-simple of the premises, with an equitable lien upon them, to the amount of the note of 52 dollars, 74 cents, and the support of *Lucy Gridley* after the insolvency of *Walker.*

I now turn to the title of the plaintiff; and I think he has clearly shown, that he is a mortgagee of the premises, subject to the prior mortgages vested in the administrator of *Green.*

*Walker,* having an equity of redemption, unincumbered by the prior mortgages already discussed, conveyed the same to *Holley & Coffing,* as collateral security to a promissory note ; which note and mortgage, by assignment, have became the property of the plaintiff. The note has never been paid, but has gone into judgment, a part of which yet remains due.

This, then, is the equitable result. The plaintiff, being the third mortgagee, is bound to pay the prior incumbrances to the administrator of *Green,* before he can render the pledge available to him; or what is virtually the same, to deduct their amount from his demand against *Walker.* This being done, he is entitled, on the common principles, to a decree of foreclosure against the defendants.

The other Judges were of the same opinion, except BRAINARD, J. who was absent.

Decree to be passed accordingly.